UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

BALWINDER SINGH,                                                                                   Petitioner,

v.                                                                                              Civil Action No. 4:25-cv-96-RGJ

MIKE LEWIS, Hopkins County Jailer;
SAMUEL OLSON, Field Office Director for U.S.
Immigration and Customs Enforcement;                           Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Balwinder Singh's Writ of Habeas Corpus. [DE 1]. Respondents responded on August 26, 2025. [DE 7]. Petitioner replied on August 27, 2025. [DE 8]. The Court held a Show Cause Hearing on August 21, 2025. [DE 4]. After the hearing, the Court ordered further briefing. [DE 9]. Both parties complied. [DE 12, DE 13]. This matter is ripe for adjudication. For the reasons below, the Court will **GRANT** Singh's Petition for a Writ of Habeas Corpus.

### I.     Background

Petitioner Balwinder Singh ("Singh") is a native and citizen of India. [DE 1 at 4]. He has been present in the United States for over 12 years. [*Id.*]. He is married to a United States Citizen and has one United States Citizen son. [*Id.*]. He lives with his family in Delphi, Indiana, and provides the primary source of financial support for his family. [*Id.*].

Singh first entered the United States in May 2013 and was deemed "inadmissible" and subject to removal. [*Id.* at 5]. He was found to have a credible fear of persecution or torture, and placed in removal proceedings. [*Id.*]. Those removal proceedings are still pending before a Chicago Immigration Court. [*Id.*]. On July 2, 2025, Singh was arrested and detained pursuant to 8

U.S.C. § 1226[1] ("Section 1226"). [*Id.*]. Pursuant to 8 U.S.C. § 1226, Counsel for Singh submitted a motion for bond redetermination hearing before an Immigration Judge. [*Id.*]. On July 16, 2025, a custody and bond redetermination hearing was held where Immigration and Customs Enforcement ("ICE") officials, for the first time, contended that Singh was being detained pursuant to 8 U.S.C. § 1225 ("Section 1225"), not Section 1226. The Immigration Judge ordered further briefing and rescheduled the hearing for July 28, 2025. [*Id.* at 6]. ICE's reasoning is based on new interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." [*Id.*]. This guidance asserts that only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under Section 1225, not Section 1226. [*Id.*]. The guidance is a reversal of ICE's longstanding policy. [*Id.*]. On July 28, 2025, the Immigration Judge determined that Singh was being detained pursuant to Section 1226, not Section 1225. [*Id.*]. The Immigration Judge found Singh eligible for release and bond under Section 1226 and set bond in the amount of $6,500. [*Id.*].

On July 28, 2025, the Department of Homeland Security ("DHS"), in conjunction with ICE, filed a Notice of Intent to Appeal the decision to the Board of Immigration Appeals. [*Id.*]. The filing invoked an automatic stay pursuant to 8 U.S.C. § 1003.19(i)(2). [*Id.*]. On August 8, 2025, ICE filed a formal Notice of Appeal and confirmed they were appealing based upon their statutory interpretation of 8 U.S.C. § 1225. [*Id.* at 7].

Singh asserts that the United States' actions violated the Due Process Clause of the Fifth Amendment, violated the Immigration and Nationality Act, and that the asserted regulation is an Ultra Vires Regulation. [*Id.* at 25-27]. Singh seeks release from his detention. [*Id.* at 28].

---

[1] Although the Court recognizes this Section is derived from the Immigration and Nationality Act ("INA") § 236, the Court will use U.S.C. citations throughout for uniformity and asks the Parties to do the same.

## II.     Exhaustion of Remedies

The United States concedes that there is "no statutory requirement precluding Petitioner from seeking habeas" but that "the doctrine of prudential exhaustion supports requiring Petitioner to exhaust the process that is ongoing before the BIA," and therefore, the Court should deny the Habeas petition. [DE 12 at 129]. The United States primarily relies on *Torrealba v. U.S. Dep't of Homeland Sec.*, 2025 WL 2444114 (S.D. Ohio Aug. 25, 2025) for this proposition. However, *Torrealba* is distinguishable from the present matter. The central legal issue in *Torrealba* is the challenging of an expedited removal order. *Torrealba* 2025 WL 2444114, at *2. That is separate and distinct from this matter, as Singh is challenging his detention based upon the invocation of an automatic stay by ICE, and how his detention allegedly violates the Due Process Clause.

As both parties agree no statute or rule mandates exhaustion, it is then within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019). The Sixth Circuit has not adopted any formal test, but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). In the alternative, a court can also choose to waive exhaustion, when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Here, all factors favor weigh *against* requiring exhaustion. The central question at issue here is whether Section

3

1225 or Section 1226 applies to Singh. This is a purely legal question of statutory interpretation and does not require a record. Alternatively, this Court is not bound, or deferential to any agency interpretation of a statute. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). Second, because of the alleged Constitutional violation, an appeal to an administrative review board, here the BIA, is not necessary. The Sixth Circuit has held due process challenges generally do not require exhaustion because the BIA cannot review constitutional challenges. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). And lastly, the United States has made clear their position on Section 1225, and it is being applied at all levels within the DHS. Therefore, it is unlikely that any administrative review would lead to the United States changing its position and precluding judicial review. *Id.* As a result, this Court finds that prequential exhaustion is not required.

In the alternative, the Court also finds that exhaustion should also be waived. Bond appeals before the BIA take on average six months to complete. *Lopez-Campos*, 2025 WL 2496379, at *5 (citing to *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)). But as stated, this is the "legal question" that is "fit for resolution." *Shalala*, 529 U.S. at 13. Prolonging Singh's detainment would mean unnecessary hardship when the Court is able to resolve the question now.

Courts within this district and across the country have waived exhaustion under similar circumstances. *Lopez-Campos*, 2025 WL 2496379, at *5 ("Because exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sep. 9, 2025) ("the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive

4

administrative exhaustion."); *Simpiao v. Hyde*, 2025 WL 2607924, at *6-7 (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted"). Therefore, this Court will follow their fellow trial courts and waive the exhaustion requirement for Singh and reach the merits of his Petition.

### III. Discussion

#### A. Section 1225 vs. Section 1226

The United States makes an argument regarding the statutory interpretation of Section 1225's applicability versus Section 1226 nearly identical to that made in *Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, slip op. at 5-10 (W.D. Ky. Sep. 19, 2025) and therefore the Court fully incorporates by reference its reasoning and decision in that action. There, the Court held that based upon the statutory context, scheme, and text of Section 1225, it was difficult to "find that an individual is 'seeking admission' when that noncitizen never attempted to do so." *Id.* at 9. This is in contrast to the BIA's holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025). *Id.* Therefore, Singh, who has been present in the United States for more than 12 years is not "seeking admission" into the United States. Thus, Section 1226, not Section 1225, should apply to his detention.

#### B. Lawfulness of Current Detention

The Court therefore comes to the same conclusion that the Immigration Judge came to in that Section 1226 applies to Singh's detention. Nevertheless, Singh remains in ICE custody pursuant to the automatic stay. 8 C.F.R. § 1003.6. Thus, the Court must determine whether the continued detention is in violation of his Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v.*

5

*Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. In response to the Due Process violation, Respondents state that "Petitioner has not been denied due process. . . Petitioner can submit arguments in opposition to the BIA, and it will make a decision." [DE 7 at 105].

>    *i.* Private Interest

It is undisputed Singh has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Singh is being held at Hopkins County Jail and is separated from his wife and one U.S. citizen child. [DE 1 at 1]. His family is "struggling to financially support" themselves and his son is "struggling to understand why his father is not around." [*Id.* at 7]. His son is also currently under the care of a pediatric pulmonologist "due to some lung and breathing issues." [*Id.* at 1].

Additionally, the invoked automatic stay does not have a foreseeable end date. This is because "[i]f the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary stay for an additional 30 days." *Sampiao v. Hyde*, 2025 WL 2607924, at *10 (citing 8 C.F.R. § 1003.6(c)(5)). The matter can also be referred to the Attorney General, who can stay

the case *indefinitely* pending disposition. 8 C.F.R. § 1003.6(d) (emphasis added). As a result, Singh faces the possibility of months, or years, under the automatic stay. *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, *3 (E.D. Mich. Sep. 9, 2025) (stating that bond appeals "typically take six months or more to be resolved at the [Board of Immigration Appeals]"). Therefore, the first *Matthews* factor strongly favors Singh.

        *ii.*    Risk of Error

The second factor concerns the risk of the erroneous deprivation of Singh's liberty interest by virtue of the automatic stay's procedures. This factor also weighs in favor of Singh. This is because the regulation's procedures *are* likely to erroneously deprive people like Singh of their liberty because *only* noncitizens who have already demonstrated release from detention are subject to the automatic stay. *Sampiao*, 2025 WL 2607924, at *10; *Garcia Jimenez v. Kramer*, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025).

At the bond hearing, the Immigration Judge heard testimony, reviewed evidence, and made an independent decision that Singh was eligible for release and that bond was appropriate. 8 C.F.R. § 1003.19(a). Yet the automatic stay allows the United States to "usurp" the role of an Immigration Judge and make a unilateral decision. *Sampiao*, 2025 WL 2607924, at *10; *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (holding that the automatic stay regulation creates a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "renders the Immigration Judge's bail determination an empty gesture"). Notably, the United States does not contest the findings of the Immigration Judge in their appeal. [DE 1 at 7]. Rather, the United States' sole reason for their appeal is that the basis of detention is Section 1225, not Section 1226. [*Id.*]. Additionally, there are reasonable alternatives available for the United States to pursue. One option is a discretionary emergency stay from the

7

BIA, which would avoid the usurping nature of the current automatic stay. *See* 8 C.F.R. § 1003.19(i)(1); *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) (holding that 8 C.F.R. § 1003.19(i)(1) provides a "simple alternative" to safeguard rights). Because of this "simple alternative," the Court finds that the second *Matthews* factor also sides in favor of Singh.

### iii. United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. But there is a fatal flaw with that reasoning. An independent, neutral arbitrator determined that the specific noncitizen at issue in this matter, Singh, does *not* pose that type of risk. [DE 1-1 at 31]. Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Singh. Therefore, all three *Mathews* weigh in favor of Singh.

## IV. Conclusion

Based upon the language, text, structure, and recent congressional action, Section 1226 governs Singh's detention. The post-hoc addition of Section 1225 is neither applicable, nor correct. Further, the Court finds Singh's detention pursuant to the automatic stay codified at 8 C.F.R. § 1003.19(i)(2) is in violation of his Due Process rights under *Matthews*. The Court need not reach the merits of Singh's *Ultra Vires* arguments, as the Respondents' violation of the INA and the Due Process Clause are sufficient for his requested relief. *Sampiao*, 2025 WL 2607924, at *12.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025).

The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). As Singh is currently subject to bond, Respondents are ordered to release Singh immediately upon posting of bond, with no other conditions beyond those imposed by the Immigration Judge. *Sampiao,* 2025 WL 2607924, at *12.

For the reasons stated above, the Court **GRANTS** Singh's Petition for Writ of Habeas Corpus [DE 1]. Upon the posting of bond, the United States is directed to release Petitioner Singh from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **September 23, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

September 22, 2025